BRYAN THEIS
THEIS LAW GROUP, P.C.
533 Second Street
Suite 400
Encinitas, CA 92024
(213) 261-4240
bryan@theislaw.com

ROSS HOWARD SCHMIERER *
DENITTIS OSEFCHEN PRINCE PC
315 Madison Avenue 3rd Floor
New York, NY 10017
646-979-3642
rschmierer@denittislaw.com

[Additional counsel appearing on signature page.]

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CLIFFORD ARMSTRONG,** individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **INVESTOR'S BUSINESS DAILY, INC.,** a California corporation, and **MARKETSMITH, Inc.**, a California corporation, <br><br> *Defendants*. | Case No.  2:18-cv-02134 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Clifford Armstrong ("Armstrong" or "Plaintiff Armstrong") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Investor's Business Daily, Inc. ("IBD" or "Defendant IBD") and Defendant MarketSmith, Inc. ("MarketSmith" or "Defendant MarketSmith") to stop their practice of sending unsolicited text

messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct, including injunctive relief. Plaintiff Armstrong, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Armstrong is a natural person residing in the City of Citrus Heights in the State of California.

2. Defendant IBD is a corporation located within the City of Los Angeles, in the State of California. Defendant does business in this District, and throughout the USA.

3. Defendant MarketSmith is incorporated in the State of California, where it functions as a division of IBD. MarketSmith has a website http://marketsmith.investors.com that is an extension of IBD's domain investors.com. On the Linkedin company profile for MarketSmith, MarketSmith is described as a "premium product of Investor's Business Daily":



[1]

4. In fact, the logo on the MarketSmith website shows "MarketSmith by Investor's Business Daily."



[2]

---

- [1] https://www.linkedin.com/company/marketsmith-incorporated/
- [2] https://marketsmith.investors.com/

5. Both of the Defendants, whether actually named or fictitiously named, was the agent of the other Defendant, and was during all relevant times acting and conducting itself within the purpose and scope of such agency. Plaintiff is informed and believes, and alleges thereon, that during all relevant times mentioned herein each Defendant, whether actually or fictitiously named was the principal, agent or employee of each other Defendant, and in acting and conducting itself as such principal, or within the course and scope of such employment or agency, took at least some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiffs for the relief sought herein. At all times relevant mentioned herein, the Defendants ratified the unlawful conduct of the other Defendant, who were acting within the scope of their agency or employment, by accepting the benefits of any transaction with knowledge of the wrongdoing, or otherwise by failing to repudiate or retract the misconduct or wrongdoing.

6. Defendant IBD and Defendant MarketSmith will sometimes be referred to herein, collectively, as "Defendants".

**NATURE OF THE ACTION**

7. In an attempt to increase its bottom line, Defendants send text messages to consumers using an autodialer on their cellular telephones without their prior express written consent in an effort to solicit their business via text message. Defendants conducted (and continue to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages to consumers' cellular telephones without consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

8. By sending these text messages, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages, in the form of the diminished use, enjoyment, value, and utility of their cellular

telephone plans. Furthermore, Defendants sent the text messages knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

9. The TCPA was enacted to protect consumers from text messages like those alleged and described herein. In response to Defendants unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring the Defendants to cease all solicitation text-messaging activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

10. Defendants do not hide the fact that they can, or even do send autodialed text messages to consumers. In their online Privacy Policy when directed to actual users, they state their ability by stating that they may call or text you "using an automatic dialing/announcing device, and that we may make such calls or texts to a mobile telephone or other similar device."[3]

11. Unfortunately for consumers, Defendants use their automatic dialing capabilities to cast their marketing net too wide and to consumers who did not consent to receive these calls and texts. That is, in an attempt to promote MarketSmith's services, Defendant IBD conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**A. Defendants Transmit Text Messages to Consumers Who Do Not Want Them**

12. Defendant's IBD and MarketSmith send text messages to consumers' cellular telephones in an attempt to solicit business by building brand awareness, and ultimately to increase their bottom lines.

---

- [3] https://www.investors.com/investors-business-daily-privacy-policy/

**4**

**Class Action Complaint**

13. Defendants send text messages promoting MarketSmith's services from telephone number 628-222-5675, among others. The text message contains a link to their website where they solicit the consumer to pay for a paid subscription to their services.

14. In sending these text messages, neither Defendant took steps to acquire the prior express written consent of Plaintiff or the Class Members who received the unsolicited text messages.

15. Defendants sent the same (or substantially the same) text message calls *en masse* promoting MarketSmith to thousands of cellular telephone numbers throughout the United States.

16. In sending the text messages at issue in this Complaint, Defendants utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendants (or their agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendants ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of sending numerous text messages simultaneously (all without human intervention).

17. Defendants are or should have been aware that text messages were and are being made without the prior express written consent of the text message recipients. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

18. Complaints about Defendant IBD's unsolicited calls are legion, showing that this company has a long history of unwanted telemarketing. Here is a small sample, including complaints that strongly suggest the use of an autodialer:

- "Constantly calling me"[4]
- "Hangs up, no message"[5]

---

[4] https://800notes.com/Phone.aspx/1-310-448-6034/14
[5] https://2000i.net/3104486034.who.called

**5**

**Class Action Complaint**

- "Hangs up never says a thin[g]"[6]
- "silent call hung up immediately"[7]
- "CALLER HANGS UP AND DOES NOT ANSWER OR LEAVE MESSAGE, VERY ANNOYING, CONSTANTLY."[8]
- "Calls once a month. Asked him to stop but won't."[9]
- "Unsolicited call"[10]

19. Each of the text messages calls sent to Plaintiff and the Classes are affiliated with Defendants.

20. By sending the text messages at issue in this Complaint, Defendants caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

21. In response to Defendants unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendants to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because they conduct a significant amount of business in this District, solicit consumers in this District, sent and continue to send unsolicited text messages to

---

[6] https://200oi.net/3104486034.who.called
[7] https://www.shouldianswer.com/phone-number/3104486034
[8] https://www.spokeo.com/310-448-telemarketers
[9] http://findwhocallsyou.com/1-310-448-6034
[10] https://www.shouldianswer.com/phone-number/3104486034

this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

23. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff Armstrong resides in this District.

## COMMON FACTUAL ALLEGATIONS

24. In recent years, companies such as Defendants have turned to unsolicited telemarketing as a way to increase their customer base. Simply put, widespread telemarketing recruits new customers.

25. Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

26. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

27. Yet, in violation of this rule, Defendants fail to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers.

28. Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF ARMSTRONG

29. On May 17, 2017 at 12:53 PM, Armstrong received two text messages from 628-222-5675. The first text reads, "(1/2) Did you know there is a lot of stock recommendations based on false data? MarketSmith is a comprehensive stock research platform that uses proven high".

30. The second text states, "(2/2) quality data so you can make profitable invest-ing decisions. Learn more here bit.ly/marketsmith."

31. The aforementioned text messages are displayed below:



32. The telephone number 628-222-5675 is owned and/or affiliated with MarketSmith, on behalf of and as part of IBD.

33.     If a user were to click on the link provided in the text message they would be directed to shop.investors.com/offer where they are solicited to sign up for a paid 3-week subscription of Investor Business Daily's MarketSmith platform for $19.95.



34.     Armstrong has not sought information regarding either MarketSmith's services, or the services of IBD. In fact, from the very wording of the text message, it is clear that Plaintiff was unfamiliar with MarketSmith as the text itself explains who the company is.

35.     Accordingly, Armstrong did not request that Defendants sent text messages to him or offer him its services using an ATDS.  Simply put, Armstrong has never provided his prior express written consent to Defendants to send solicitations text messages to him and he has no business relationship with MarketSmith or IBD.

36.     By sending unauthorized text messages as alleged herein, Defendants, have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the texts disturbed Armstrong's use and enjoyment of his cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as Defendants fail to receive a call/text-recipient's prior express written consent.

37. In order to redress these injuries, Armstrong, on behalf of himself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits solicitation text messages to cellular telephones.

38. On behalf of the Classes, Armstrong seeks an injunction requiring Defendants to cease all unsolicited wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

39. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seek certification of the following Class:

> **Text Message No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendants (or a third person acting on behalf of Defendants) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendants claim they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

40. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, its subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

41. **Numerosity**: The exact sizes of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a) whether Defendants' conduct constitutes a violation of the TCPA;

    (b) whether Defendants utilized an automatic telephone dialing system to send text messages to members of the Class;

    (c) whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

    (d) whether Defendants obtained prior express written consent to contact any Class members.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

44. **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with

respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION

**Telephone Consumer Protection Act**

**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff Armstrong and the Text Message No Consent Class)**

45. Plaintiff repeats and re-alleges the foregoing factual allegations as if fully set forth herein.

46. Defendants sent solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

47. Defendants sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' autodialer disseminated information *en masse* to Plaintiff and other consumers.

48. By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and

by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

50. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class.

## PRAYER FOR RELIEF

51. An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class, and appointing their counsel as Class Counsel;

52. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

53. An order declaring that Defendants actions, as set out above, violate the TCPA;

54. A declaratory judgment that Defendants' text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

55. An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

56. An order requiring Defendants to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

57. An injunction requiring Defendants to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

58. An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

59. An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

60. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

61. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**CLIFFORD ARMSTRONG**, individually and on behalf of the Class of similarly situated individuals

Dated: March 13, 2018            By:   /s/ Bryan Theis
                                           One of Plaintiff's Attorneys

Bryan Theis
Theis Law Group, P.C.
533 Second Street
Suite 400
Encinitas, CA 92024
Tel: (213) 261-4240
Fax: (833) 276-7001
bryan@theislaw.com

Ross Howard Schmierer *
DeNittis Osefchen Prince PC
315 Madison Avenue
3rd Floor
New York, NY 10017
646-979-3642
Fax: 856-797-9978

14

Class Action Complaint

Email: rschmierer@denittislaw.com

Nathan Stein*
Nathan@StefanColeman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
(877) 333-9427
(888) 498-8248

*Pro hac vice to be sought.